## CITIZENS AND SOUTHERN BANK *v.* TAGGART.

1. Under the Civil Code (1910), § 2364, a suit against a bank incorporated under the laws of this State can be brought against it, outside of the county of its principal place of business, only upon a cause of action arising from acts of its agents done in the county where such suit is brought, and in which the bank has an agency.
2. Under the agreed statement of facts, the Atlanta branch of the Citizens and Southern Bank is not an agent or agency of that bank, within the meaning of the code provision above cited. This branch, under the facts, is conducting business, not as agent of the parent bank, but as the bank itself, and in its capacity as principal.

No. 5772. JUNE 20, 1927.

The Court of Appeals (in Case No. 17463) requested instruction from the Supreme Court upon the following questions:

Taggart sued the Citizens & Southern Bank in the superior court of Fulton county, alleging that the bank had damaged him by negligently failing to collect certain collateral. The bank filed a plea to the jurisdiction, in which it set up that the superior court of Fulton County could not legally take cognizance of the suit, because at the commencement of the suit and thereafter the defendant bank resided in Chatham County; that the transaction in question occurred in Chatham County; that the defendant had no agency in Fulton County, and that its Atlanta branch was not an agent of the defendant bank and had no connection with the controversy under consideration; that the superior court of Chatham County and the city court of Savannah "have jurisdiction of this case." An agreed statement of facts recites:

"1. The defendant, the Citizens & Southern Bank, was incorporated by an act of the legislature of Georgia, approved September 27, 1887, under the name of 'Citizens Bank of Savannah,' which act is to be found on pages 344 et seq. of the bound volume of Georgia Laws for 1887. On the 20th day of March, 1906, the name was changed by order of the Secretary of State for the State of Georgia to the present name of the Citizens & Southern Bank.

Agency, 2 C. J. p. 420, n. 11, 15.

Banks and Banking, 7 C. J. p. 490, n. 31; p. 754, n. 7 New.

Corporations, 14a C. J. p. 791, n. 24, 27, 34, 38; p. 793, n. 68; p. 794, n. 83, 96; p. 795, n. 8; p. 796, n. 12.

Railroads, 33 Cyc. p. 1255, n. 90.

Statutes, 36 Cyc. p. 1106, n. 29; p. 1111, n. 62, 63; p. 1117, n. 17.

Venue, 40 Cyc. p. 96, n. 79; p. 97, n. 81.

On the 24th day of September, 1917, the charter was renewed by an order passed by the Secretary of State, for thirty years. Its capital stock has been increased from time to time, under orders of the Secretary of State, to the present capitalization of three million dollars.

"2. The Atlanta branch of the defendant was established in Atlanta the 29th day of September, 1919, and has been continuously in operation since said time. The said Atlanta branch was established under the banking act of Georgia, approved August 16, 1919, and its relationship to the parent bank and its status are determined by this law. The terms 'parent bank' and 'branch bank' have the meaning they bear under said banking act. Service in this case was made on the cashier of the Atlanta branch.

"3. The Atlanta branch has from its establishment done a large and prosperous business, and its deposits for more than four years past have run from thirty-five (35,000,000) to forty (40,-000,000) million dollars, and [it] has always had its own board of directors, as provided for by section 111 of article 1 of the banking act.

"4. The defendant has similar branch banks in Macon, Augusta, and Athens.

"5. The notes and contracts and all the transactions referred to in the declaration in this case, between the plaintiff and the defendant, were made and had in Savannah with the officers and agents of the defendant residing in Savannah and employed at the parent bank. The notes and contracts were there payable and to be performed, and none of said transactions were conducted in Atlanta or at the Atlanta branch, or with officers and agents employed at the Atlanta branch.

"6. There has been set aside by the board of directors of the parent bank, for the exclusive use of the said Atlanta branch, such proportion of the capital as is required by the superintendent of banks; and the Atlanta branch is taxed on the capital so set aside, by the City of Atlanta and the County of Fulton, and the parent bank is relieved of taxation to the extent of the capital so set aside."

The trial judge overruled the plea to the jurisdiction, and to that ruling the defendant bank excepted. Section 2364 of the Civil Code of 1910 provides as follows: "It shall be lawful to sue

any of the incorporate banks of this State, in any county thereof, for any acts of their agents, where said banks or corporations may now have, or hereafter may establish, an agency."

1. Should this section be construed to mean that a suit on any cause of action against an incorporated bank may be brought in any county in this State where such bank has an established agency; or should it be construed to mean that where an incorporated bank has established an agency in another county, the bank may be sued in the county where the agency is established, for any acts of the agents of such agency?

2. Under the agreed statement of facts, is the Atlanta branch of the defendant bank an agent or agency thereof, within the meaning of the provisions of section 2364 of the Civil Code of 1910?

3. If the answer to the first question is that section 2364 of the Code, properly construed, means that a suit on any cause of action against an incorporated bank may be brought in any county where the bank has an established agency, and if an affirmative answer is given to the second question, then an answer is requested to the following question: The act of 1885 (Acts 1884-5, p. 99), entitled "An act to define where corporations, mining, or joint-stock companies may be sued, and to define how service of the suit may be effected," provides that "any corporation, mining, or joint-stock company . . may be sued on contracts in that county in which the contract sought to be enforced was made, or is to be performed, if it has an office and transacts business there. Suits for damages, because of torts, wrong or injury done, may be brought in the county where the cause of action originated." This act provides also "that all laws and parts of laws in conflict with the provisions of this act be and the same are hereby repealed." Are the provisions of the act of 1863, embodied in section 2364 of the Code of 1910, repealed by the above-stated provisions of the act of 1885, embodied in section 2259 of the Code of 1910?

4. If a negative answer is given to the immediately preceding question, then an answer is requested to the following questions: The defendant bank was chartered by the legislature in 1887 (Acts 1887, p. 344). The act granting the charter located the bank in Savannah (thereby making it suable there), and also pro-

23

vided that "when the management of any estate or funds is vested in said bank, under the provisions of this act, said bank may be sued as to any matter connected therewith in the county in which the appointment is made, and it shall be the duty of the company to have an agent in every such county, upon whom service can be effected; and in case they fail to have such agent, they may be served by publication as non-resident defendants in equity cases are now served." This was the only provision in the act as to the bank being suable in any other county than its home county of Chatham. In 1917 the bank's charter was renewed by an order passed by the Secretary of State. Section 2194 of the Civil Code of 1910, in prescribing the form of certificate to be issued by the Secretary of State when the charter of any bank is renewed, provides that the following language shall be inserted in the certificate: "The grant of corporate powers and privileges . . is hereby renewed for the space of thirty years, as to all parts thereof not in conflict with the constitution and laws now or hereafter of force in this State." Under these facts, do the provisions of the act of 1887, chartering the defendant bank, require that the instant suit be brought in Chatham County?

*Adams & Adams* and *Alston, Alston, Foster & Moise,* for plaintiff in error.

*Samuel L. Olive, Green S. Johnston,* and *Little, Powell, Smith & Goldstein,* contra.

HINES, J. 1. The answer to the first question propounded by the Court of Appeals depends upon the proper construction of section 2364 of the Civil Code of 1910. This section is as follows: "It shall be lawful to sue any of the incorporate banks of this State, in any county thereof, for any acts of their agents, where said banks or corporations may now have, or hereafter may establish, an agency." Counsel for the plaintiff contend that a suit on any cause of action against an incorporated bank in this State may be brought in any county where that bank has an established agency. They contend that the logical construction of the language of this section is, to treat the last clause, which they denominate clause three, as relating to and modifying the language "in any county," and, so construing the language of the section, that the right to bring suits against a bank on any cause of action is limited to a county where an agency exists. They insist that

the presence of commas before and after the clause, "for any acts of their agents," indicates an intention to separate that clause from its immediate surroundings, and is strongly persuasive of the construction which they place upon this section. They concede that it is grammatically possible to treat clause three as relating to and modifying the words, "for any acts of their agents," but insist that such construction is illogical for the reason that there can be no acts of agents except where an agency exists. They further urge that under this construction a plea to the jurisdiction would necessarily have to be overruled, because it would leave the language "in any county thereof" unqualified in any way. They further assert that it is absolutely impossible to analyze or diagram this section with the third clause located at any other point than one of the two mentioned, and to make the section mean that the right to bring suits in a county is limited to cases based on acts of the bank's agent committed in that county. Finally, counsel for the plaintiff contend that this section does not mean that the right to bring suits against a bank in a county is limited to cases based on acts of its agents committed in that county, but on the contrary provides that any cause of action against a bank can be sued on in any county where the bank has an agency. They urge that, if the construction sought by the bank is adopted, this section would be meaningless, because this construction would make section 2364 an exception to section 2259, as to venue against corporations, when both, according to this construction, mean the same thing, and would place the legislature in the attitude of setting up an exception to the general statute that is no exception at all. Counsel for the bank contend that under this section a bank can only be sued in a county, outside of the county of its principal office or place of business, for acts of its agents done at an agency of the bank in the county where the suit is instituted. In other words, they insist that an incorporated bank can be sued outside of the county of its domicile, only where the cause of action originated in the county where suit is brought and where the bank has an agency.

In construing statutes the courts must look diligently for the intention of the legislature. Civil Code (1910), § 4 (9). The constitutional policy of this State is, that suits shall be brought in the county of the residence of the defendant. Constitution of

1777, Watkins' Dig. 13; Constitution of 1795, Id. 39; Constitution of 1798, art. 3, sec. 39, Cobb's Dig. 1120; Constitution of 1861, Code 1863, § 4981; Constitution of 1865, Code 1868, § 4971; Constitution of 1868, Code 1873, § 5123; Constitution 1877, Code 1910, § 6543. Except as specially provided for, all civil cases must be tried in the county where the defendant resides. Civil Code (1910), §§ 5526, 6543. This principle applies to corporations as well as to natural persons. *Central Bank* v. *Gibson,* 11 *Ga.* 453; *S. W. Railroad* v. *Paulk,* 24 *Ga.* 356; *A., K. & N. Ry. Co.* v. *Wilson,* 116 *Ga.* 189, 192 (42 S. E. 356); *McCall* v. *Central of Georgia Ry. Co.,* 120 *Ga.* 602 (48 S. E. 157); *Northern Contracting Co.* v. *Maddux,* 144 *Ga.* 686 (87 S. E. 892). The general rule of law is that a domestic corporation resides where its principal office or place of business is situated. *Watson* v. *Richmond & Danville R. Co.,* 91 *Ga.* 222 (18 S. E. 306). It is true that the legislature can fix the residences of corporations in counties in which they establish agencies or places of business. *Davis* v. *Central R. &c. Co.,* 17 *Ga.* 323. By the act of February 20, 1854, railroad companies were made subject to suit for any damage done to any live stock or other property, where the damage did not exceed $30, in the justice's court of the district in which the damage was done. Acts 1853-54, p. 92. The constitutionality of this act was dealt with in *Davis* v. *Central R. &c. Co.,* supra, and its constitutionality was upheld. By the act of March 5, 1856 (Acts 1855-56, p. 154), it was provided that "The several railroad companies of this State shall be liable to be sued in any county in which the cause of action originated, by any one whose personal property has been injured by them, their officers, agents, or employees, in or by the running of their cars or engines." In *Southwestern Railroad Co.* v. *Paulk,* supra, this court held that a suit for the killing of a person by a railroad, under the act of 1850, should be brought in the county where the principal office of the corporation was kept. By the act of December 3, 1859 (Acts 1859, p. 48), it was declared that no suit against a railroad company in this State should thereafter be dismissed for want of jurisdiction of the court in the county in which the suit was brought, if the road of the company was located in or ran through such county, and if the cause of action arose, or the contract was made or to be performed, in the county where the suit was instituted.

The Code of 1861, in regard to the venue of suits against railroad companies, contained this provision: "All railroad companies shall be liable to be sued in any county in which the cause of action originated, by any one whose personal property has been injured by such railroad company, their officers, agents, or employees, in or by the running of the cars or engines, for the purpose of recovering damages for such injuries. And also on all contracts to be performed' in the county where suit is brought." Code (1861), § 3317. The same provision was contained in section 3329 of the Code of 1868. By the act of March 4, 1869 (Acts 1869, p. 14), the above section of the Code of 1868 was amended by striking out the words "in or by the running of the cars or engines," and by inserting, after the word "contracts," the words "made or," thus making the section applicable to all causes of action against railroad companies. The provisions of section 3329 of the Code of 1868, as thus amended, appeared in the Codes of 1873 and 1882.

By the act of December 20, 1892 (Acts 1892, p. 59), section 3406 of the Code of 1882 was amended by striking from the second line thereof the words "liable to be," and the word "any," and inserting in lieu of the latter word the word "the." After this amendment, the provision touching the venue of suits against railroad companies appeared as section 2334 in the Code of 1895. It declares, among other things, that "All railroad companies shall be sued in the county in which the cause of action originated." This section of the Code of 1895 was amended by the act of December 21, 1898 (Acts 1898, p. 50), and as thus amended this provision, as to venue, appears in section 2798 of the Code of 1910. It provides that all railroad companies shall be sued for torts in the county in which the cause of action originated, and upon all contracts made or to be performed in the county where the suit is brought. So, express companies may be sued "in the county where goods are received for shipment, or where goods are to be delivered." Civil Code (1910), § 2385. After so providing for venue of suits against express companies (§ 2385), insurance companies (§ 2563), fidelity-insurance companies (§ 2553), railroad companies (§ 2798), telegraph companies (§ 2814), and banks (§ 2364), the legislature made a general provision for the venue of suits against all other corporations chartered by authority

of this State. This provision is as follows: "Any corporation, mining, or joint-stock company, chartered by authority of this State, may be sued on contracts in that county in which the contract sought to be enforced was made or is to be performed, if it has an office and transacts business there. Suits for damages, because of torts, wrong or injury done, may be brought in the county where the cause of action originated." Civil Code (1910), § 2259. This history of the legislation upon the subject of the venue of suits against corporations discloses that, with the possible exceptions of insurance and telegraph companies, suits against domestic corporations may, and in the case of railroads shall, be brought in the county where the torts are committed, or where contracts are made or to be performed. Acts permitting corporations to be sued in counties other than those of their domicile should, because of the above constitutional principle and the policy embraced therein, be construed strictly, and not extended beyond the requirements of their terms. *Etowah Milling Co.* v. *Crenshaw,* 116 *Ga.* 406 (42 S. E. 709).

The above history of the legislation fixing the venue of suits against domestic corporations discloses the public policy of the State in this matter, and throws light upon the construction of the above Code provision for suits against banks. Before we would feel authorized to adopt a construction of an act which would be radically different from the public policy thus shown, the language of the act should be so clear as to leave the matter free from reasonable doubt. We think that it was the intention of the legislature, in passing the act of April 17, 1863, now embodied, as to banks, in the section of the Code which we have under consideration, to subject banks to suits for acts of their agents in counties where such acts are done, and where the banks have agencies. It is inconceivable that the legislature intended to subject a bank to suits on all causes of action, arising from acts done at the home office, in any county of the State, where it might have an agency or place of business. Such a construction would subject a parent bank to all suits on causes of action originating out of transactions had with the bank at its home office, or at any of its branches, in any county of the State where it may have an agency. Under this construction of this section, the Citizens & Southern Bank could be sued in Clarke County on all causes of action arising out of

transactions had at the home office of the bank in Savannah, and at its branches in Atlanta, Augusta, Macon, and Valdosta. It seems fairly clear that it was not the intention of the legislature to create such a state of affairs, and to permit all litigation against this bank to be concentrated in any county where it has a branch or an agency. We are of the opinion that an incorporated bank of this State can be sued, outside of the county of its domicile, only where the cause of action originated in the county where the suit is brought, and where the bank has an agency. We think the language, "where said banks or corporations may now have, or hereafter may establish, an agency," relates to and modifies both the language, "in any county thereof," and the language, "for any acts of their agents." The insistence of counsel for the plaintiff, that the presence of commas before and after the language, "for any acts of their agents," indicates an intention to separate that clause from its immediate surroundings, and is therefore strongly persuasive of the construction which they place on this section, is not conclusive. The presence of punctuation marks is often helpful in arriving at the meaning of a sentence; but they frequently confuse, and if rigidly followed lead to erroneous conclusions. Counsel for the plaintiff admit that it is grammatically possible to treat the last clause in this section as relating to and modifying the words, "for any acts of their agents," but they insist that such construction is illogical for the reason that there can be no acts of agents where no agency exists. We do not think this contention is well taken. Of course there can be no acts of agents where there are no agents; but under this section there must be both acts of agents and an agency in the county where the bank is sued. They further insist that a plea to the jurisdiction, under the construction which we place on this section, would necessarily have to be overruled, because it would leave the language, "in any county thereof," unqualified in any way. Under the construction which we put upon this section, this language is doubly qualified, being qualified by the language, "for any acts of their agents," and by the last clause in this section. Finally, counsel for the plaintiff contend that it is absolutely impossible to diagram this section with the last clause located at any other point than one of the two mentioned, and that it is therefore impossible to make the section mean that the right to bring suits in the county is limited

to cases based on acts of the bank's agents committed in that county. We do not change the location of this clause; we leave it where we find it. We make it refer to a cause of action originating in a county where the suit was brought, and the presence of an agency of the bank in such county when suit is brought. Section 2364 should not be treated as an exception to section 2259, but both of the sections should be treated as exceptions to the general rule of venue laid down in sections 5523 and 6543.

So we think that this section of the Code should not be construed to mean that a suit on any cause of action against an incorporated bank may be brought in any county of this State where such bank has an established agency; but should be construed to mean that where an incorporated bank has established an agency in another county, the bank may be sued in the county where the agency is established, for any cause of action arising out of acts of its agents at such agency.

2. Under the agreed statement of facts, the Atlanta branch of the Citizens & Southern Bank is not an agent or agency of said bank within the meaning of the provisions of section 2364 of the Civil Code of 1910. The term "agents," in this section, means those who act for, and in the place of, the bank, and under authority from it, in the conduct of its business at a place where the bank establishes an agency. The word "agency," as used in this section, means place of business, other than the bank's principal place or places of business. *Tuggle* v. *Enterprise Lumber Co.,* 123 *Ga.* 480 (51 S. E. 433). Under the banking act a branch of this bank is the bank doing business itself. It is the principal itself conducting business. It has its own board of directors, "who shall be responsible for the conduct and management of said bank, but not of the parent bank or any other branch save that of which they are officers, directors, or committee." Acts 1919, p. 136. Before a branch can be established, the written approval of the superintendent of banks must be given, and not until he shall have ascertained to his satisfaction that the public convenience and advantage will be promoted by the opening of such bank. Acts 1919, p. 136. The directors of the parent bank have set aside for the exclusive use of the Atlanta branch such an amount of its capital as was required by the superintendent of banks. On this capital so set aside by it, the Atlanta branch is taxed by the City of At-

lanta and the County of Fulton. The parent bank is released from taxation on this capital. It is not a separate corporate entity. It is part of the corporate entity. It is a branch of the corporate entity. So, in answer to the second question propounded by the Court of Appeals, we reply that the Atlanta branch of this bank is not an agent or an agency within the meaning of the provisions of the above section of the Code.

3. In view of the above answers, no answers are required to the other questions propounded by the Court of Appeals.

*All the Justices concur, except Gilbert, J., disqualified.*