28195.   HILL, for use, etc., *v.* SHAW..

DECIDED JUNE 29, 1940.

758

*H. A. Etheridge,* for plaintiff.   *W. S. Northcutt,* for defendant.

STEPHENS, P. J.   (After stating the foregoing facts.)   On August 19, 1937, Shaw entered into a contract with Hill, by which the former agreed to purchase from Hill a cemetery lot for $100, conditioned "upon the title being found to be good, legal, and unencumbered."   This contract recited that it was made on the part of Hill acting through his sales agent, Etheridge Sr.   Hill executed a warranty deed in favor of Shaw, to be delivered to Shaw when the purchase-money was paid, which deed was placed with his attorney.   The title to the lot, upon examination, was

found to be "good, legal, and unencumbered." It is alleged that Hill listed this lot for sale with Etheridge Sr., placing a time limit on the sale of August 21, 1937; that Etheridge Jr., on or before August 21, because the time between August 19, 1937, the date of the contract of sale, and August 21, 1937, was too short to allow for examination of the title, "advanced" the purchase-price of the lot to Hill's attorney and "took up the deed which he now holds." There does not appear to have been any relation of any sort between Etheridge Jr. and Shaw, necessitating or authorizing such action on the part of Etheridge Jr.

On September 4, 1937, the deed was "tendered" to Shaw, with a request for the purchase-money "in compliance with the contract," and Shaw refused to accept this deed and pay the purchase-money unless the president of the cemetery company, in whose cemetery the lot involved was situated, would "sign an agreement to open a grave on said lot when so requested to do." The present suit was instituted by Hill, for the use of Etheridge Jr., against Shaw, for the $100 purchase-money with interest. The judge sustained the demurrer of the defendant and dismissed the action. The Supreme Court, in transferring the case to this court, held that the action was not one for specific performance of an executory contract, but was a suit at law for the stipulated purchase-price of the land, by the vendor suing for the use of a "third person not appearing to have any interest to protect, or express contract for reimbursement," who "advanced the purchase-price to the attorney [for the vendor] and 'took up' the deed." See *Hill* v. *Shaw,* supra. Hill, the vendor, had received the purchase-price asked by him for this lot, and the deed executed by him had been delivered to Etheridge Jr. There does not appear to have been any transfer or assignment of any rights in and to the contract between the vendor and the vendee, that is Hill and Shaw, from Hill to Etheridge Jr. Any rights which Hill the vendor might have had to enforce the payment of the purchase-money by Shaw, upon his failure to comply with the contract, remained in Hill. So far as appears from the allegations of the petition, Hill has received the purchase-price for his lot and has parted with the legal and equitable title. The executory contract has been fully performed so far as Hill is concerned. Hill no longer has any interest or rights to protect. As the transaction

now appears, Hill is fully satisfied. He has no claim or legal right of action against Shaw or any one else relative to this transaction.

There are no circumstances creating any right to subrogation, legal or equitable, in Etheridge Jr., upon his advancing the purchase-money to Hill's attorney and taking the deed to Shaw which Hill had executed and left with his attorney. The action of Etheridge Jr. in "advancing" the purchase-price of the lot was purely voluntary, and for what reason does not appear, and does not cast any duty on Shaw to reimburse him. Under the contract Hill became the creditor of Shaw. Etheridge Jr. paid the money to Hill. He is now seeking, in effect, to recover such payment from Shaw. He had no authority from Shaw to make the payment. He had no interest in the subject-matter to protect. He was not requested by either Hill or Shaw to make the payment. He was not acting under any contract, express or implied, with Shaw to do this. Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor. The substitute is in all respects in the place of the party to whose rights he is subrogated. Subrogation is of two kinds. One is legal subrogation, which takes place as a matter of equity, without any agreement to that effect made with the person paying the debt. The other is conventional subrogation, which is applied where an agreement is made with the person paying the debt that he shall be subrogated to the rights and remedies of the original creditor. It is never applied for the benefit of a mere volunteer who pays the debt of another without any assignment or agreement for subrogation, and who is under no legal obligation to make the payment, and is not compelled to do so for the preservation of any rights or property of his own. See *Cornelia Bank* v. *First National Bank,* 170 *Ga.* 747, 750 (154 S. E. 234).

There is no rule which authorizes a person having no beneficial interest to protect to sue, in the name of another, for his use. *Thrift* v. *Baker,* 144 *Ga.* 508, 510 (87 S. E. 676) ; *American Surety Co.* v. *Bibb County,* 162 *Ga.* 388, 391 (134 S. E. 100). In order to maintain a suit for the use of another, there must be a legal right of action in the party bringing the suit against the party against whom the suit is brought. See *Rose* v. *Glover-Ball Co.,* 156 *Ga.* 109, 115 (118 S. E. 691). There is no such right in Hill.

The judge properly sustained the general demurrer to the petition.

*Judgment affirmed. Sutton and Felton, JJ., concur.*