35181. WILLIAMS *et al. v.* GUERRY.

DECIDED SEPTEMBER 24, 1954.

*A. C. Felton, III,* for plaintiffs in error.

*W. F. Blanks,* contra.

QUILLIAN, J. F. G. Guerry sued Mary Williams and Lonnie Williams for fraud and deceit. The trial court overruled the general demurrer to the petition, and the defendants assign error on that order.

The petition alleges: The plaintiff, at all times complained of was, and still is, a business man operating a cotton gin and storage warehouse in the City of Montezuma. "3. Petitioner avers that on September 8, 1951, defendants asked the said plaintiff to purchase from them one bale of cotton, of a value of $124.15; and that on September 15, 1951, defendants asked the said plaintiff to purchase from them two bales of cotton valued at $340.57; and that on September 22, 1951, the said defendants asked the plaintiff to purchase from them one bale of cotton valued at $136.32; and that on October 4, 1951, the said defendants asked the plaintiff to purchase from them one bale of cotton valued at $138.95; and that on November 7, 1951, said defendants asked the plaintiff to purchase from them one bale of cotton valued at

$169.49. 4. Plaintiff avers that on all of the above five occasions, and each of said five occasions, he asked the said defendants if the said title to the cotton were clear and if the same were mortgaged, and that on all five of said occasions and on each of said five occasions the said defendants, with intent to defraud the plaintiff, represented to the plaintiff that the cotton was not mortgaged, and that the said cotton was free and clear of all claim by any person, and that the said defendants had a perfect right to sell the said cotton to your plaintiff. 5. That relying upon the representations of the defendants, the plaintiff on each and on all of the said five occasions and on each of the dates above indicated, purchased the said cotton described in paragraph three, supra, from the defendants and paid them therefor the total sum of $909.48. 6. Petitioner avers that the representations made by the defendants as to their right to sell the said cotton were false and with fraudulent intent and that all growing crops on their farm for the crop year 1951 had been mortgaged to the Farmers Home Administration, an Agency of the United States Department of Agriculture. 7. That after purchasing said cotton, demand was made upon the plaintiff by the Farmers Home Administration for the proceeds of this sale, whereupon the plaintiff demanded of the defendants that the said sums be paid by them to the said Farmers Home Administration. The defendants failed and refused to make such payment to the mortgagee, whereupon the plaintiff was forced to pay the said Farmers Home Administration the sum of $909.48, the above-mentioned purchase price of the cotton, plus $35.97 as interest to the date on which payment was made by the plaintiff to the Farmers Home Administration, on May 26, 1953, to-wit: That plaintiff has thus been damaged in the amount of $945.45, the amount of such payment. 8. Petitioner avers that the defendants knew that the representations made by them were false when they made them, and that they made them with intent to defraud your petitioner; and that the plaintiff did not know that such statements and representations were false, but believed such statements to be true."

One induced to buy personal property by false representations of the vendor that it is unincumbered, may, upon discovery of the fraud, either sue on the contract of sale for a breach of the

warranty, or may waive the contract and bring a suit for fraud and deceit, as in this case. If, in such circumstances, the vendee discovers that there was, at the time he purchased the property, a valid subsisting mortgage properly recorded, the description of which covers the same property as that purchased, he does not have to wait until the mortgage is foreclosed and a levy made, before exercising the right and privilege of discharging the outstanding lien against the property. It must appear from the petition that the physical seizure of the property was possible, or that the removal of such property by the vendee so as to prevent a levy of an execution issued upon the foreclosure of such mortgage from being made could not be accomplished except under such circumstances as to render him liable to the holder of the mortgage for the payment of the same. For, if the mortgage was unrecorded, or if it was executed within 30 days prior to the date of the sale, and the vendee had no actual notice of its existence, then he would, of course, be an innocent purchaser of the property, and no execution could be enforced against him. Likewise, if he had in good faith, and before learning of the existence of the mortgage, sold the property, and it had been removed beyond the jurisdiction of the levying officer or to some place where it was not available to him for levy, the vendee would have no reason to protect his title by paying off the mortgage, nor would he have any liability by reason of the existence of the mortgage. Consequently, in either of the two events last recited, the vendee would have suffered no loss and, not having been injured, would have no right to sue his vendor.

The petition in the instant case failed to show that the mortgage was recorded at the time of the sale or that it had been executed within 30 days prior thereto, or that the property was available for levy. And it was not alleged that the property had not been removed beyond the jurisdiction or otherwise secreted or placed beyond the reach of the levying officer by the vendee under such circumstances as would render him liable to pay the mortgage. The petition not having alleged loss, one of the elements necessary to a suit for fraud and deceit was lacking, and the court erred in overruling the general demurrers.

It did not affirmatively appear that the payments made were voluntary. This case is easily distinguishable upon its facts

from the cases of *Chapman* v. *Ellis*, 58 *Ga. App.* 614 (199 S. E. 650), *Hill* v. *Shaw*, 62 *Ga. App.* 757 (9 S. E. 2d 850), and *Cornelia Bank* v. *First National Bank*, 170 *Ga.* 747 (154 S. E. 234). In the first case referred to, a stranger paid the funeral expenses of another when under no obligation to do so. In the *Hill* case a person having no interest and no right to protect paid money in the discharge of a lien against property to which he had no title and in which he had no right, equity, or interest. In the last-mentioned case it was held that the party was not a volunteer. In that case a party held a mortgage against two tracts of land, one of which had been purchased by the plaintiff. The plaintiff paid over to the mortgagee a sufficient sum to discharge the mortgage against his tract of land, and instead of applying the money to that mortgage, the payee applied the payment to a tract of land in which the plaintiff had no interest. The plaintiff sued in equity to have the mortgage against his tract of land canceled of record. He was, of course, not a volunteer.

So, this case is decided upon the principle, not that it appeared from the petition that the plaintiff was a volunteer, but simply that sufficient facts were not alleged to show that he suffered damage.

*Judgment reversed. Felton, C. J., and Nichols, J., concur.*